UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                Case No. 8:14-cr-54-T-36AAS

ROSA ENEDIA PAZOS CINGARI, and
DOMENICO CINGARI,

    Defendants.

_____/

### DEFENDANTS' JOINT SENTENCING MEMORANDUM IN SUPPORT OF GUIDELINE OFFENSE LEVEL CALCULATION UNDER §2L2.1

The defendants Rosa Enedia Pazos Cingari ("Mrs. Cingari") and Domenico Cingari ("Mr. Cingari") (collectively "the Cingaris"), through undersigned counsel, hereby respectfully submit this sentencing memorandum in support of their request that this Honorable Court apply USSG §2L2.1[1] when calculating their guidelines offense levels.

The Cingaris were charged with substantive 18 U.S.C. § 1546 counts as well as conspiracy and mail fraud. The conspiracy and mail fraud counts were dependent on § 1546 violations; i.e. there would have been no conspiracy or mail fraud but for the false statements in the immigration applications. Accordingly, Eleventh Circuit precedent and the Guidelines instruct that the Cingaris' offense levels be calculated under §2L2.1 rather than §2B1.1. *See*

---

[1] §2L2.1 is entitled: "Trafficking in a Document Relating to Naturalization, Citizenship, or Legal Resident Status, or a United States Passport; False Statement in Respect to the Citizenship or Immigration Status of Another; Fraudulent Marriage to Assist Alien to Evade Immigration Law."

1

*United States v. Kuku*, 129 F.3d 1435, 1438-1441 (11th Cir. 1997) (where underlying offense conduct involved selling social security cards to illegal immigrants, district court should have applied §2L2.1 rather than §2B1.1); USSG §2B1.1(c)(3) (§2B1.1 does **not** apply to mail fraud convictions if the underlying conduct is "specifically covered by another guideline").

## PROCEDURAL BACKGROUND

1. The original five-count Indictment (Doc. 1) charged Mrs. Cingari with violating § 1546 by making material false statements on United States Citizenship and Immigration Services ("USCIS") forms in violation of immigration laws and regulations. Specifically, Mrs. Cingari was charged with:

- Three counts related to USCIS Form I-589s (Applications for Asylum and Withholding of Removal) that contained false statements regarding asylum applicants' addresses, dates of departure from Mexico, and details of harm/persecution suffered; and

- Two counts related to USCIS Form I-130s (Petitions for Alien Relatives) that contained applicants' false addresses, citizenship, and social security numbers.

2. The Superseding Indictment (Doc. 42) charged three additional counts, each based on false statements in immigration applications. Two counts charged Mrs. Cingari with mailing immigration applications that contained false statements in violation of § 1546, thereby violating 18 U.S.C. § 1341 (mail fraud). The third count charged Mrs. Cingari and her husband Mr. Cingari with conspiring, in violation of 18 U.S.C. § 371, to: (a) make false statements in immigration applications, in violation of § 1546; and (b) mail immigration applications that contained false statements in violation of § 1546, thereby violating § 1341. The charged overt acts corresponded with immigration applications containing false statements.

3. The Second Superseding Indictment (Doc. 68) charged eight additional counts, each based on false statements in immigration applications. Mr. Cingari was charged with making false statements in two immigration applications, in violation of § 1546. Mrs. Cingari and Mr. Cingari were charged with mailing six immigration applications that contained false statements in violation of § 1546, thereby violating § 1341.

4. The initial PSRs (Docs. 179, 180) calculated the Cingaris' guideline offense level under §2L2.1:

| Guideline | Description | Offense Level |
|---|---|---|
| §2L2.1 | Base Offense Level | 11 |
| §2L2.1(b)(2)(B) | 25-99 Passports/Documents | +6 |
| §3C1.1 | Obstruction of Justice | +2 |
| | **Total Offense Level** | **19**[2] |
| | Criminal History | 0 |
| | **Range (19/I)** | **30-37 months** |

5. The government objected to the initial PSRs. *See* Addenda to Docs. 198, 200 (Gov't Obj. at 2-3). The government argued that §3D1.3(b) instructed that the guideline section with the highest offense level applied; and because the six mail fraud counts (charged in the Second Superseding Indictment) provided the highest offense level, §2B1.1 applied. *See* Addenda to Docs. 198, 200

6. The government submitted its calculations of the Cingaris' offense levels:

| Guideline | Description | Offense Level | |
|---|---|---|---|
| §2B1.1(a) | Base Offense Level | 7 | 7 |
| §2B1.1(b) | Specific Offense Characteristics | +22 | +20 |
| §3A1.1(b)(1) and (2) | Large number vulnerable victims | +4 | +4 |
| §3B1.3 | Abuse private trust/special skill | +2 | +2 |
| §3C1.1 | Obstruction of Justice | +2 | +2 |

---

[2] The Cingaris do not concede that the initial PSRs calculations were correct. Rather, the Cingaris object to the §3C1.1 upward adjustment. Mr. Cingari objects to the lack of a downward adjustment for his minor role in the offense.

|                      |         |         |
|----------------------|---------|---------|
| **Total Offense Level** | 37      | 35      |
| Criminal History     | 0       | 0       |
| **Range:**           | **210-262** | **168-210** |

7. The final PSRs adopted the government's analysis and conclusions. (Docs. 198, 200). After applying §2B1.1, the initial PSRs' calculated offense level of **19** (**30-37 months**) (Docs. 179, 180) shot up to a level **37** (**210-262 months**) for Mrs. Cingari, and a level **35** (**168-201 months**) for Mr. Cingari (Docs. 198, 200).

8. Increasing the Cingaris' offense level based on a count of conviction with the highest guideline level irrespective of the offense conduct violates Eleventh Circuit precedent and the purposes of sentencing, and promotes charging decisions based on guidelines calculations rather than offense conduct.

## MEMORANDUM OF LAW

One of the stated purposes of the Guidelines is to "limit the significance of the formal charging decision and to prevent multiple punishment for substantially identical offense conduct." USSG, Introductory Commentary to Part 3D, paragraph 4 (2016). The government asserted in its Sentencing Memorandum that, due to the Cingaris' convictions of mail fraud, the application of §2B1.1 "should be undisputed at sentencing." Doc. 212 at 1. However, "[u]nder [the Eleventh] Circuit's precedent, a district court should look at the **specific offense conduct underlying the conviction** to ensure that the listed guideline is actually appropriate in each case." *United States v. Kuku*, 129 F.3d 1435, 1439 n.7 (11th Cir. 1997) (emphasis added) (citing *United States v. Shriver*, 967 F.2d 572, 574 (11th Cir.1992); *United States v. Day*, 943 F.2d 1306, 1307 (11th Cir.1991)).

The Cingaris' offense conduct was making false statements in immigration applications, in violation of 18 U.S.C. § 1546. The mail fraud charges charged the Cingaris' with mailing the immigration applications that contained false statements – there would have been not crime in the mailing but for the immigration applications. Accordingly, the Cingaris' offense levels should be calculated under §2L2.1 rather than §2B1.1.

## I.    The §2B1.1(c)(3) Cross Reference Instructs That § 2B1.1 Does Not Apply

The Background Commentary to §2B1.1 explains:

> Because federal fraud statutes often are broadly written, a single pattern of offense conduct usually can be prosecuted under several code sections, as a result of which **the offense of conviction may be somewhat arbitrary**…The specific offense characteristics **and cross references** contained in this guideline are designed with those considerations in mind.

USSG, Background Commentary to §2B1.1, paragraph 2 (emphasis added). The §2B1.1(c)(3) cross reference notes that §2B1.1 will often **not** apply to convictions of mail fraud. The cross reference provides that when a defendant is "convicted under a statute proscribing false, fictitious, or fraudulent statements or representations generally" and the defendant's offense conduct is "specifically covered by another guideline in Chapter Two, **apply that other guideline**." §2b1.1(c)(3) (emphasis added). The application notes further explain:

> Subsection (c)(3) provides a cross reference to another guideline in Chapter Two (Offense Conduct) in cases in which the defendant is convicted of a **general fraud** statute, and the count of conviction establishes an offense involving fraudulent conduct **that is more aptly covered by another guideline**.

§2B1.1 app. n. 16 (Cross Reference in Subsection (c)(3)) (emphasis added). Notably, four examples of "general fraud" statutes are listed; mail fraud is second. Thus, the Guidelines

5

specifically contemplate the scenario at bar, and instruct that Cingaris' mail fraud convictions do not render §2B1.1 applicable. *See also United States v. Rubin*, 999 F.2d 194 (7th Cir. 1993) (where defendant was convicted of criminal antitrust conspiracy for price fixing, and mail fraud for concealing the conspiracy, the Antitrust Offense Guideline applied rather than §2B1.1).

**II.     Under Similar Circumstances, the Eleventh Circuit and Other Federal Courts Have Held That §2.L2.1 Applies, Rather Than the Conviction with the Highest Guideline**

"A strict focus on the technicalities of the sentencing process obscures the overarching directive to match the guideline to the offense conduct which formed the basis of the underlying conviction." *Kuku*, 129 F.3d at 1440. Accordingly, the conviction with the highest guideline does not apply if it is not reflective of the "primary purpose" of the offense. *Id.* at 1440 (rejecting the government's grouping argument and remanding for resentencing under §2L2.1).

Accordingly, § 2L2.1 applies when, like here, "the conduct described in § 2L2.1 more aptly characterizes [defendants'] offense conduct." *Id. See also United States v. Shi*, 317 F.3d 715 (7th Cir. 2003) (§2L2.1, rather than §2B1.1, applied to crime of using a counterfeit immigration stamp on Form 1-94 visa applications. §2B1.1 applied to forgeries generally); *United States v. Mahmood*, 26 Fed. Appx. 569, 571–72 (7th Cir. 2001) ("Section 2L2.1 is the most applicable guideline to offenses involving the use of counterfeit identification documents to violate laws relating to citizenship or legal resident status."); *United States v. Walker,* 191 F.3d 326 (2d Cir.1999) (submitting false asylum applications on behalf of (2) submitting false asylum applications on behalf of immigrants,); *United States v. Viera,* 149

6

F.3d 7 (1st Cir.1998) (possessing a counterfeit immigration stamp); *United States v. Velez,* 113 F.3d 1035, 1038 (9th Cir.1997) (section 2L2.1 is the guideline applicable to an offense involving the filing of false INS applications and documents on behalf of illegal aliens).

## **CONCLUSION**

For the aforementioned reasons, the Cingaris respectfully request that this Honorable Court apply §2L2.1 to their offense level calculations.

Dated this 16th day of March 2017.

> Respectfully submitted
>
> *s/ Stephen M. Crawford*
> 610 West Bay Street
> Tampa, FL 33606
> (813)251-2273
> Stephen_Crawford@msn.com

## **CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on March 16, 2017, I electronically filed the foregoing with the CM/ECF system, which will send a notice of electronic filing to:

Stacie B. Harris, Assistant United States Attorney
James A. Muench, Assistant United States Attorey
Simon Alexander Gaugush

                                  /s/ *Stephen Crawford*
                                    STEPHEN CRAWFORD